IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **DUSTIN L. BOWERS** : | |
| : | Case No. 2:20-cv-2759 |
| **Plaintiff,** : | |
| : | **CHIEF JUDGE ALGENON L. MARBLEY** |
| v. : | |
| : | **Chief Magistrate Judge Deavers** |
| **COMMISSIONER OF** : | |
| **SOCIAL SECURITY,** : | |
| **Defendant.** : | |
| : | |

## OPINION & ORDER

This matter is before the Court on the Plaintiff's Objections (ECF No. 21) to the Magistrate Judge's August 4, 2021 Report and Recommendation (ECF No. 23), recommending that this Court overrule the Plaintiff's Statement of Errors (ECF No. 17) and affirm the Commissioner's decision. The Plaintiff filed an Objection to the Report and Recommendation and the Defendant filed a response. (ECF Nos. 24–25). Following *de novo* review by this Court, Plaintiff's Objections are hereby **OVERRULED** and the Court **ADOPTS** the Magistrate Judge's Report and Recommendation in its entirety based on an independent consideration of the analysis therein. Accordingly, the Commissioner's decision is **AFFIRMED**.

### I. BACKGROUND

Plaintiff Dustin L. Bowers filed an application for disability insurance benefits on January 17, 2012, alleging that he had been disabled since December 10, 2011; he also filed an application for SSI benefits on April 3, 2012 for a disability beginning on August 30, 2009. (R. at 195–212). His application was denied initially and upon reconsideration. (R. at 40–61, 130–155). Following an administrative hearing, the Administrative Law Judge ("ALJ") issued a decision finding that

1

the Plaintiff was not disabled. (R. at 1–3). Mr. Bowers brought suit in this Court in November 2015 and the case was subsequently remanded to the ALJ, upon joint motion of the parties, in July 2016. (R. at 1073).

The Appeals Council then remanded Mr. Bowers' case for further evaluation of the various medical opinions. (R. at 1078–81). A different ALJ held a second administrative hearing and subsequently issued a decision finding that Plaintiff was not disabled. (R. at 1002–36, 1038–1071). The Appeals Council remanded the case again on the grounds that the ALJ had failed to comply with its initial remand order. (R. at 1114–18). A third ALJ then held two more hearings, at which he examined a medical expert and a vocational expert; Plaintiff testified at the fourth hearing, as well. (R. at 948–59, 963–1001). In February 2020, the ALJ issued a decision finding again that Plaintiff was not disabled (R. at 912–45). Mr. Bowers filed this suit as a result.

In the opinion denying benefits, the ALJ conducted the required five-step sequential analysis for a disability benefits claim. *See* 20 C.F.R. § 404.1520.[1] First, the ALJ determined that

---

[1] The five sequential steps are as follows:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

2

Plaintiff met the insured status requirements of the Social Security Act through June 30, 2022. (R. at 919). At step one, the ALJ found that Mr. Bowers did not engage in substantial gainful activity during between August 30, 2009, the alleged onset date of disability, and September 21, 2014, the alleged closed period of disability. (*Id.*). At step two, the ALJ found that the Plaintiff had the following severe impairments: Immunoglobulin (IgA) Nephropathy (Berger's Disease); Obesity; a Depressive Disorder; Borderline Intellectual Functioning; and Attention Deficit Hyperactivity Disorder (ADHD). (R. at 919–26). At this step, the ALJ engaged in a detailed review of the administrative record before him, including medical records and the opinions offering by various medical and non-medical sources. (*Id.*). He detailed the weight he was assigning to each opinion and his rationale for the weight assigned. (*Id.*).

At step three, the ALJ determined that these impairments did not, either singly or in combination, meet or medically equal the requirements of any section of the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 926–28). Between steps three and four, ALJs assess an individual's residual functioning capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4). A person's RFC will then be used at steps four and five to assess her claim for disability benefits. *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 28, n.3 (6th Cir. 2009). The ALJ concluded that Mr. Bowers had the following RFC:

> After careful consideration of the entire record, [the ALJ] finds that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) subject to the following limitations: (1) occasional crouching, crawling, kneeling, stooping, balancing, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, and scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) limited to performing simple, repetitive tasks with an SVP of 1 or 2; (5) occasional superficial contact with coworkers and supervisors (superficial contact is defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals, but as lacking the ability to engage in more complex social interactions, such as persuasion of other people or resolving interpersonal

---

20 C.F.R. § 404.1520(a)(4).

> conflicts); (6) no public contact; (7) no fast paced production work or jobs that involve strict production quotas; (8) limited to performing jobs that involve very little, if any, change in the job duties or the work routine from one day to the next; and (9) limited to jobs that would require no more than fifth-grade reading skills and seventh grade math skills.

(R. at 928).[2] Notably, the RFC does not refer to the necessity of a job coach. The ALJ again detailed the weight he was assigning each opinion, as well as his reasoning. (*Id.* at 921–33). He opted to assign "little" weight to Jackie Clark, the vocational counselor who advised that Mr. Bowers would struggle vocationally without supports such as a job coach. (R. at 922–23). In making his weighting determination, the ALJ explained that he found Ms. Clark's opinion inconsistent with other evidence in the record, including findings from acceptable medical sources, the claimant's testimony, and the conclusion of the medical expert. (*Id.*). The ALJ also considered the testimony of Karen Schneider, the vocational expert, as to how a person in claimant's position would fare in the national economy. (R. at 934–35). As to Ms. Schneider's testimony concerning potential effects of several other functional limitations, the ALJ found that the limitations were not supported by the evidence and deemed her responses as not relevant. (R. at 935). The ALJ concluded that Mr. Bowers was not disabled within the meaning of the Social Security Act. (*Id.*).

Mr. Bowers filed suit in this Court on May 28, 2020. (ECF No. 1). When Plaintiff filed his statement of specific errors, he argued that the ALJ's decision should be reversed because he improperly discredited the opinion evidence that documented his need for a job coach. (ECF No. 17). The Commissioner filed a response in opposition, arguing that substantial evidence supported the ALJ's RFC findings because he had properly considered the objective medical evidence, medical opinions, subjective allegations, and vocational expert testimony. (ECF No. 22). The

---

[2] The relevant facts concerning the Plaintiff's RFC are thoroughly set forth in the Magistrate Judge's Report and Recommendation. (ECF No. 12). The relevant facts will be incorporated into the analysis below when appropriate.

Commissioner asserts that there was no evidence showing that Mr. Bowers required a job coach to sustain any work activity. (*Id.* at 15).

On August 4, 2021, the Magistrate Judge issued a Report and Recommendation, overruling the Plaintiff's statement of specific errors. (ECF No. 23). The Magistrate Judge recommended that this Court affirm the Commissioner's decision, finding that it was reasonable for the ALJ to determine that Plaintiff did not need a job coach in the absence of any evidence showing improvement of his cognitive functioning. (*Id.* at 22–24). The Magistrate Judge thus found the ALJ's decision supported by substantial evidence. (*Id.*). Mr. Bowers objected to the Report and Recommendation, arguing again that the ALJ failed to assess accurately his severe mental health limitations, which he contends establish his need for a job coach. (ECF No. 24 at 7). He argues that assistance from his job coach allowed him to return to work. (*Id.*). The Commissioner filed a response to his Objections and directed this Court to its earlier filing on the grounds that the Plaintiff had not brought forth any new evidence, case law, or arguments. (ECF No. 25). This matter is now ripe for review.

## II. STANDARD OF REVIEW

This Court, upon objection, is required to "make a *de novo* determination of those positions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). This Court's review is "limited to determining whether the Commissioner's decisions 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)).

Substantial evidence constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also*

*Ellis v. Schweiker*, 739 F.2d 245, 248 (6th Cir. 1984). Substantial evidence requires "more than a mere scintilla, but only so much as would be required to prevent judgment as a matter of law against the Commissioner if this case were being tried to a jury." *Inman v. Astrue*, 920 F. Supp. 2d 861, 863 (S.D. Ohio 2013) (citing *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988)). In determining whether the Commissioner's findings are supported by substantial evidence, a court must consider the record as a whole. *See Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984). The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *See Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would have arrived at a different conclusion. *Elkins v. Sec'y of Health & Hum. Servs.*, 658 F.2d 437, 439 (6th Cir. 1981).

Additionally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). "An ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013).

### III.     LAW AND ANALYSIS

Before the Magistrate Judge, Plaintiff asserted only one error: that the ALJ did not properly evaluate the opinion evidence, including from medical sources, that documented his need for a job coach. (ECF No. 17). The Magistrate Judge disagreed with Plaintiff's assessment, finding that the

ALJ had not erred in finding that the Plaintiff essentially had the same level of cognitive impairment during and after the closed period, as it related to his need for a job coach. (ECF No. 23 at 23). Plaintiff objects to the Magistrate Judge's conclusion, again arguing that the ALJ had not accurately assessed his limitations and need for a job coach. (ECF No. 24). This Court finds that the Magistrate Judge did not err in finding the ALJ's non-disability finding was supported by substantial evidence, including as it pertains to Mr. Bowers' need for a job coach.

Substantial evidence requires "more than a mere scintilla" of evidence. *Inman*, 920 F. Supp. 2d at 863. Where the decision of the Commissioner meets this standard, it must be affirmed, even if this Court would arrive at a different conclusion. *Elkins*, 658 F.2d at 439. In this case, the Commissioner's decision was well-supported, including as it pertained to the need for a job coach, and easily meets the substantial evidence standard. At a November 2019 hearing, the ALJ heard testimony from Dr. Jeffrey Andert, a medical expert, who testified that Mr. Bowers might need intermittent oversight "maybe once or so" over the course of an eight-hour shift. (R. at 956). The claimant's attorney asked Dr. Andert about the opinions of others who had concluded the claimant would not be successful without a job coach. (R. at 957). Dr. Andert acknowledged that Ms. Clark made reference to "a great deal of job coaching and communication with the employer," but that he did not see it as a recommendation for a job coach but rather on-the-job supervision. (*Id.*). He admitted that a vocational expert could have more knowledge on the subject. (*Id.*).

In January 2020, the ALJ held another hearing, at which he heard testimony from a vocational expert, as well as Mr. Bowers. (R. at 965). Mr. Bowers testified that, during the closed period, he worked part-time at a restaurant where he did dishes, bussed tables, made deliveries, and ran errands as needed. (R. at 972–73). The ALJ asked Mr. Bowers what happened or changed as to his mental condition to allow him to return to work on a full-time basis and Mr. Bowers

7

responded that he had been working for several years already on a part-time basis. (*Id.* at 981). When asked if any change in mental health had enabled him to return to full-time work, Mr. Bowers testified that there had not been. (*Id.*). Mr. Bowers' attorney asked him about his experience with job coaching and Mr. Bowers testified that he had previously worked with a job coach, who helped him secure employment and checked in on him twice a week. (R. at 988–89). He also testified that the job coach helped him get to his job on time and improve his skills with customers. (R. at 989).

Vocational expert Karen Schneider also testified at this hearing as an impartial witness. (R. at 991). The ALJ asked Ms. Schneider a hypothetical about the claimant's limitations and his RFC, before asking about the requirement for a job coach. (R. at 994). The vocational expert testified that a job coach would be atypical in competitive work and would be considered a workplace accommodation. (*Id.*). The claimant's representative asked the vocational expert whether an individual with marked to moderate limitations who had previously worked with a job coach and had issues maintaining employment would need a job coach. (R. at 997–98). The vocational expert testified that such an individual would "definitely" need a job coach. (*Id.*). In closing, the claimant argued that he would not be working full-time if he had not received job coaching services in the past. (R. at 999).

In his February 27, 2020 decision, the ALJ reviewed the opinion evidence from several non-treating sources from between 1994 and 2012, detailing the substance of their opinions, the weight he was assigning to the opinions, and the reason for such weighting. (R. at 921–22). He also detailed the opinion of Ms. Clark, the vocational counselor who opined that Mr. Bowers would struggle without significant long-term supports. (R. at 922–23). As to Ms. Clark, the ALJ opted to assign little weight to her opinion because vocational counselors did not constitute a source of

8

medical evidence and the information does not equal the probative value of medical sources. (R. at 922–23). He also noted that the other evidence in the case did not support Ms. Clark's assessment, since Mr. Bowers had returned to work without any special supervision and without any indication of an improvement in his memory and cognitive functioning.

The ALJ also addressed the testimony of Ms. Schneider, the vocational expert, in reaching his conclusion. The ALJ found that the hypothetical posed to Ms. Schneider concerning potential effects of other functional limitations were not relevant, as these limitations were not supported by evidence in Mr. Bowers' case and thus had not been excluded in the RFC. (R. at 935). Specifically, he found that her testimony in response to these hypotheticals was "not deemed relevant," after he had provided the rationale for that determination. (*Id.*). After considering both the testimony of Ms. Clark and Ms. Schneider, the ALJ concluded that Mr. Bowers' successful return to work without an attendant change in mental state undercut their recommendations for continued job coaching. (R. at 923).

Under 20 C.F.R. § 404.1527(f)(1), opinions from nonmedical sources may outweigh the medical opinions of an acceptable medical source, such as when these sources have more experience treating the individual or their opinions are more consistent with the evidence as a whole. An ALJ must explain the weight given to opinions from nonmedical sources and "ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." 20 C.F.R. § 404.1527(f)(2). The ALJ's opinion complies with this regulation: he indicated that he was assigning Ms. Clark's opinion little weight because the opinions of acceptable medical sources and the claimant himself undermined her assessment of the case. (R. at 922–23). The ALJ provided specific reasons as to how the claimant's condition

9

and return to work without a job coach or change in mental state undercut Ms. Clark's recommendation of a job coach. (R. at 922–23). He likewise found certain portions of Ms. Schneider's testimony in response to a hypothetical was not relevant. (R. at 935). As to why, the ALJ explained that Ms. Schneider had been asked a hypothetical about a person with several other functional limitations that he, in light of the other evidence in the case, found were not supported and thus not includable in Mr. Bowers' RFC. (*Id.*). Again, the ALJ addressed a portion of her testimony, found that it was not relevant, and provided a reason for doing so. (*Id.*). He essentially assigned the opinion no weight, though not in those exact words, and with a proper explanation. Thus, the ALJ did not err in following the applicable regulations in this case.

Furthermore, the ALJ's finding that Mr. Bowers did not require a job coach is supported by substantial evidence in the record. While Ms. Clark testified that she believed Mr. Bowers required a job coach, as did Ms. Schneider in response to a hypothetical, the ALJ based his conclusion on other substantial evidence in the record. This evidence includes the testimony of Mr. Bowers, multiple medical opinions, and the uncontroverted fact that Mr. Bowers returned to work without any change in his cognitive and/or intellectual functioning and without the assistance of a job coach. This Court is limited to determining whether the Commissioner's decision was supported by substantial evidence and a review of the record shows more than substantial evidence underpinning the ALJ's decision. In *Long v. Commissioner of Social Security*, the Northern District of Ohio found that testimony of an examining psychologist who stated that a claimant "may" require a job coach could be outweighed by other medical source opinions coming to the opposite conclusion. No. 5:10 CV 2422, 2012 WL 646183, at *3 (N.D. Ohio 2012). As in this case, the job coach in *Long* was classified as a "work accommodation," rather than a component of the RFC. *Id.* The *Long* court ultimately found on review that substantial evidence supported the

10

ALJ's decision not to include the necessity for a job coach. *Id.* While Ms. Clark's opinion as to a job coach is firmer than was the case in *Long*, the ALJ here still rested his decision not to include a job coach in the RFC on substantial other evidence in the record. Thus, Plaintiff's objections to the Report and Recommendation are unavailing.

Given the specificity of the ALJ's findings and his decision to still give the vocational expert's testimony some weight, the Magistrate Judge did not err in affirming the ALJ's decision. Further, this court's independent review of the ALJ's findings and the record reveals that the ALJ's decision was supported by substantial evidence in the record.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Objections to the Magistrate Judge's Report and Recommendation (ECF No. 24) are **OVERRULED**. The Court hereby **ADOPTS** the Magistrate Judge's Report and Recommendation (ECF No. 23) and **AFFIRMS** the Commissioner's decision. This case is hereby **DISMISSED.**

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: September 16, 2021**